UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MJ & JJ, LLC; dba PEACOCK MANOR APARTMENTS, | § § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-15 |
| | § | |
| CLEAR BLUE SPECIALTY INSURANCE COMPANY, *et al*, | § § § | |
| | § | |
| Defendants. | § | |

# **ORDER**

In December 2018, Plaintiff MJ & JJ, LLC, d/b/a Peacock Manor Apartments ("Plaintiff"), filed this insurance action in Texas state court against Defendants Clear Blue Specialty Insurance Company ("Clear Blue"), Madsen, Kneppers & Associates, Inc. ("MKA"), Hylton Cruickshank, and Charles Jendrusch. *See* D.E. 1-1. Clear Blue removed the action to this Court on the basis of diversity jurisdiction. D.E. 1. MKA, Cruickshank, and Jendrusch ("the MKA Defendants") filed a motion to dismiss (D.E. 23), and Plaintiff filed a motion to remand (D.E. 25). After initial review, the Court issued its Order (D.E. 31), converting the motion to dismiss to a motion for summary judgment. No additional evidence was submitted by the deadline given. *See* D.E. 32.

The parties agree that Jendrusch and Cruickshank are not diverse, but the MKA Defendants contend that they were improperly joined and that removal to federal court was thus proper. Although the motion to remand raises a jurisdictional question, the legal standard for the two motions is the same and they will be addressed together. For the

reasons discussed further below, Plaintiff's motion to remand (D.E. 25) is DENIED and the MKA Defendants' motion to dismiss (D.E. 23) is GRANTED.

## I. STANDARD OF REVIEW

On a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.*

Fraudulent joinder can be established by showing that the plaintiff is unable to establish a cause of action against the non-diverse party in state court. *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). The defendant must demonstrate that there is no possibility of recovery by the plaintiff against the in-state defendant. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). This test is similar to the test for resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Travis*, 326 F.3d at 648. However, the Court may "pierce the pleadings" and consider summary-judgment style evidence when addressing a motion to remand. *Id.* at 648-49; *Smallwood*, 385 F.3d at 573-74 (further discussing when a court may pierce the pleadings).

Having converted the Rule 12 motion to a Rule 56 motion, the Court applies the summary judgment standard of review to the request to dismiss. Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must view the

facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Salazar-Limon v. City of Houston*, 826 F.3d 272, 274-75 (5th Cir. 2016).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. *Anderson*, 477 U.S. at 248.

Here, although the motion to remand raises a jurisdictional question that this Court must address before considering the merits of the motion to dismiss, both motions ultimately require the same analysis, and the resolution of one dictates the resolution of the other. The motion to remand and accompanying responses merely cite to the parties' substantive arguments raised regarding the motion to dismiss. (*See* D.E. 25 at 7; D.E. 27 at 2-3; D.E. 30 at 1-2). As such, the two motions will be addressed together.

## II. BACKGROUND

### a. Complaint and Claims

On December 7, 2018, Plaintiff filed this lawsuit in the 156th District Court for San Patricio County, Texas. D.E. 1-1. Clear Blue removed the case to this Court on the basis of diversity jurisdiction, stating that, although Plaintiff, Cruickshank, and Jendrusch were all citizens of Texas, complete diversity existed because Cruickshank and Jendrusch

were improperly joined and the claims against them should be disregarded for diversity purposes. D.E. 1 at 2-9.

In its first amended complaint filed in this Court, Plaintiff alleges that it is the owner of a Clear Blue insurance policy for an apartment complex located in San Patricio County, Texas. D.E. 18 at 3. In August 2017, a hurricane caused extensive damage to the property's roof, along with substantial damage to the exterior and interior of the buildings. Plaintiff submitted an insurance claim to cover the costs of repairs. *Id.*

Clear Blue assigned adjuster Joe Hornbeck to inspect the damage. *Id.* at 4. Hornbeck informed Plaintiff that there was severe damage and that he would submit an estimate including the full scope of damages to the roof, siding, interior electrical system, and sheetrock. Clear Blue then retained MKA, which assigned Cruickshank and Jendrusch to adjust the damages. Cruickshank and Jendrusch severely underscoped, undervalued, and denied the damage caused by the hurricane. They omitted almost all roof damage, allowed only minimum charges for interior sheetrock repair, and ignored electrical issues, among other repair needs. They spent a little over an hour inspecting the entire apartment complex. *Id.*

Plaintiff further alleges that Cruickshank and Jendrusch submitted their erroneous and fraudulent report to MKA and Clear Blue, which adopted their findings. *Id.* at 5. MKA, Cruickshank, and Jendrusch knowingly submitted an estimate that would cause Clear Blue to issue inadequate payment. *Id.* Plaintiff relied on Clear Blue's and Hornbeck's representations that appropriate coverage would be afforded, specifically by

telling tenants that insurance proceeds were forthcoming that would allow them to repair the damage, but the full payment due under the policy never arrived. *Id.* at 5-6.

Plaintiff alleges the following causes of action against the MKA Defendants.[1] First, the MKA Defendants violated the Texas Insurance Code provision on unfair settlement practices by misrepresenting that the damage was not covered by the policy, failing to provide an explanation for the offer of a compromise settlement of the claim, and failing to conduct a reasonable investigation of the damages. *Id.* at 7-8, 10-16. Second, the MKA Defendants committed common law fraud and conspiracy to commit fraud by joining together to misrepresent material facts about the scope of damage covered by the insurance policy. *Id.* at 16. Finally, the MKA Defendants committed tortious interference with respect to the insurance contract between Plaintiff and Clear Blue. *Id.* at 17.

    b. **Evidence**

Jendrusch stated the following in a declaration. *See* D.E. 23-1. MKA understood that Plaintiff submitted a claim to Clear Blue, which then retained Hornbeck, an independent adjuster with Provencher and Company, to adjust the claim. *Id.* at 1-2. Hornbeck created an estimate for the alleged damage, but the MKA Defendants were never provided a copy of his estimate or told what it was. *Id.* at 2. Provencher and Company retained MKA as a building consultant to create an estimate for repair costs. Jendrusch assigned Cruickshank to complete the assignment. They briefly inspected the property, prepared an estimate for the damage, and provided it to Hornbeck. They had no

---

[1] Plaintiff also raises several claims against Clear Blue, which are not currently at issue.

further involvement in Plaintiff's claim. MKA is a construction consulting and engineering firm, not an independent adjusting firm, and none of the MKA Defendants are licensed adjusters. They were never provided with a copy of Plaintiff's insurance policy and did not evaluate or analyze Plaintiff's coverage. *Id.*

MKA's report, prepared by Cruickshank and Jendrusch, indicated that it was prepared for Provencher and Company and that "[r]eliance upon this document ... should not be made by any party except the intended recipient." D.E. 24-2 at 3. The report stated that the purpose was to "prepare an opinion of the probable cost of construction for work" on the apartments. *Id.*

## III. DISCUSSION

### a. Texas Insurance Code

The MKA Defendants argue that Plaintiff's claims under the Texas Insurance Code necessarily fail because the MKA Defendants were third-party building consultants and were not adjusters engaged in the business of insurance. D.E. 23 at 6-9. They assert that they made no decisions regarding whether Plaintiff's claims were covered by the insurance policy, did not analyze or evaluate claim coverage under the policy, did not communicate with Plaintiff about the policy, and had no authority to adjust, deny, or settle the insurance claim. *Id.* at 9-11.

Plaintiff responds that the statutory language of Texas Insurance Code § 4101.001 establishes that the MKA Defendants are adjusters subject to the statute. D.E. 24 at 5-6. Plaintiff contends that Cruickshank and Jendrusch were hired to inspect the buildings and

determine the scope of the damage and the cost of repairs, which directly determined how much compensation Plaintiff would receive. *Id.* at 6-9.

Under the Texas Insurance Code, a person may not engage in a practice that is "an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Tex. Ins. Code § 541.003. Such an unfair act occurs where the insurer: (1) misrepresents to a claimant a material fact or policy provision relating to the coverage at issue in a claim; (2) fails "to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of a claim where the insurer's liability has become reasonably clear; or (3) refuses to pay a claim without conducting a reasonable investigation, among other reasons. *Id.* § 541.060(a)(1), (2), (7). A "person" is "an individual, corporation . . . or other legal entity engaged in the business of insurance, including an . . . adjuster." *Id.* § 541.002(2). An "adjuster" is someone who investigates or adjusts losses as an independent contractor or as an employee of, among other possibilities, an independent contractor. *Id.* § 4101.001. A person cannot act as an adjuster unless licensed to do so. *Id.* § 4101.051.

Texas courts have concluded that "engineers [and engineering firms] who investigate and consult with insurance companies in the adjustment of a claim are not 'persons' engaged in the business of insurance." *Michels v. Safeco Ins. Co. of Ind.*, 544 Fed. App'x 535, 540 (5th Cir. 2013), *abrogated on other grounds by Int'l Energy Ventures Mgmt, L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193 (5th Cir. 2016); *see also Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787, 793 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Specifically, in *Dagley*, the court concluded that an engineering firm

hired by an insurance company to assess the damage, if any, to a covered property was not engaged in the business of insurance where it did not: (1) participate in the sale or servicing of policies; (2) make any representations regarding the scope of coverage; or (3) adjust any claims. *Dagley*, 18 S.W.3d at 793.

Here, Plaintiff has failed to state a claim for unfair settlement practices under the Texas Insurance Code against the MKA Defendants because they were not a person "in the business of insurance." Tex. Ins. Code § 541.002(2). As in *Dagley*, MKA is an engineering consulting firm that was hired by an insurance company to assess damage to a covered property. *See Dagley*, 18 S.W.3d at 793. It did not participate in the sale or servicing of Plaintiff's policy, make any representations regarding the scope of coverage, or adjust any claims. *See id.*; D.E. 23-1 at 2. Ultimately, Plaintiff's claim rests on the idea that Clear Blue relied on Cruickshank and Jendrusch's report to determine the final reimbursement amount, but the same was true in *Dagley*, where the insurer relied on an engineering firm's conclusions to deny claims or offer lower payment. *Dagley*, 18 S.W.3d at 789-90.

### b. Remaining Claims

The MKA Defendants further argue that Plaintiff's tortious interference claim has been specifically rejected by the Texas courts. D.E. 23 at 11. Nonetheless, they argue that Plaintiff's allegations do not establish the elements of a tortious interference claim because their consulting report was not the proximate cause of any breach of contract. *Id.* at 11-12. Similarly, the MKA Defendants argue that Plaintiff has failed to raise a fraud claim because, even if the report included material misrepresentations, Plaintiff did not

rely on them. *Id.* at 13-15. Finally, they argue that Plaintiff's allegations do not establish the elements of a conspiracy to commit fraud because there was no unlawful, overt act in furtherance of a conspiracy. *Id.* at 15-16.

Plaintiff responds that, as to conspiracy to commit fraud, the relevant unlawful act was Cruickshank and Jendrusch's decision to knowingly and fraudulently underscope, undervalue, and deny the damage to the buildings, which they did with the intent of reaching a lower estimate than Hornbeck calculated. D.E. 24 at 9-10. Plaintiff argues that this allowed Clear Blue to issue inadequate payment, breaching the insurance contract. *Id.* Further, Plaintiff argues that it has alleged the elements of fraud because the MKA Defendants knowingly misrepresented the scope of damages, which was a material fact, with the intent that Plaintiff would rely on it in evaluating the damage to the property. *Id.* at 10-12.

The elements of tortious interference are: (1) the existence of a contract subject to interference; (2) the occurrence of an act of interference that was willful and intentional; (3) the act was a proximate cause of the plaintiff's damage; and (4) actual damage or loss occurred. *Dagley*, 18 S.W.3d at 793. Texas courts have determined that an independent adjusting firm hired exclusively by an insurer has no relationship with, and thus does not owe a duty to, the insured, regardless of whether the claim is phrased "as negligence, bad faith, breach of contract, [or] tortious interference." *Dear v. Scottsdale Ins. Co.*, 947 S.W.2d 908, 917 (Tex. App.—Dallas 1997), *disapproved of on other grounds by Apex Towing Co. v. Tolin*, 41 S.W.3d 118 (Tex. 2001).

To prevail on a fraud claim, a plaintiff must show: (1) the defendant made a false material representation; (2) the defendant knew the representation was false or made it recklessly without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). In alleging fraud, the plaintiff must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

The elements of conspiracy are: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages. *Dagley*, 18 S.W.3d at 795. The mere agreement to resist an insurance claim is not an actionable civil conspiracy, and the submission of a report indicating that there were no damages is not an unlawful, overt act in support of a conspiracy. *Id.*

Here, Plaintiff has also failed to state a claim under any other theory against MKA, Cruickshank, or Jendrusch. First, as to tortious interference, even if the MKA Defendants qualified as adjusters, they were an independent firm hired exclusively by the insurer and had no relationship with Plaintiff. D.E. 18 at 4; *Dear*, 947 S.W.2d at 917. Thus, they did not owe a duty to Plaintiff. Moreover, the MKA Defendants could not have knowingly or willingly interfered with a contract as alleged by Plaintiff where they did not know what Hornbeck's earlier damage estimate was. D.E. 23-1 at 2. Second, as to fraud, even if Plaintiff's allegations are sufficient as to the first two prongs, Plaintiff's

own submitted evidence does not support that the MKA Defendants intended to induce Plaintiff to act on its damage estimate or that Plaintiff's reliance was justified. *JPMorgan Chase Bank*, 546 S.W.3d at 653. The damage report specifically indicated that it was prepared only for Provencher and Company and should not be relied upon by anyone else. D.E. 24-2 at 3. Finally, as to conspiracy to commit fraud, even if the MKA Defendants and Clear Blue agreed to resist an insurance claim, that alone does not qualify as an actionable conspiracy. *Dagley*, 18 S.W.3d at 795. There must also have been an unlawful, overt act in support of the conspiracy, and the submission of a report minimizing the damage is not unlawful. *Id.*

## IV. CONCLUSION

Plaintiff's motion to remand (D.E. 25) is DENIED and the MKA Defendants' motion to dismiss (D.E. 23) is GRANTED. Plaintiff's claims against MKA, Cruickshank, and Jendrusch are DISMISSED with prejudice.

ORDERED this 29th day of July, 2019.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE